## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Baxano Surgical, Inc., | Case No. |
| Debtor.[1] | |

**MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(C)(1), 364(C)(3), 364(D)(1), 364(E) AND 507, (B) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (C) GRANT PRIMING LIENS AND SUPERPRIORITY CLAIMS TO THE DIP LENDER, AND (D) PROVIDE ADEQUATE PROTECTION TO PREPETITION LENDER PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364, (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND (C) AND (III) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession (the "Debtor"), hereby moves (the "Motion")[2] this court for the entry of an interim order (the "Interim Order"), substantially in the form attached hereto as Exhibit A, and a final order (the "Final Order), in form to be filed prior to the final hearing on the Motion (the "Final Hearing"), pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"):  (i) authorizing the Debtor to obtain debtor-in-possession financing from Hercules Technology Growth Capital, Inc. ("Hercules" or, as applicable, the "DIP Lender") pursuant to

---

[1]    The last four digits of the Debtor's tax identification numbers are 9022.  The address of the Debtor's corporate headquarters is 110 Horizon Drive, Suite 230, Raleigh, North Carolina 27615.

[2]    Capitalized term used but not defined herein shall have the meanings ascribed to such terms in the DIP Termsheet.

the terms of the termsheet (the "DIP Termsheet") attached hereto as Exhibit 1 to the Interim

Order; (ii) modifying the automatic stay; (iii) authorizing the Debtor's use of cash collateral, as

defined in Section 363(a) of the Bankruptcy Code (collectively, the "Cash Collateral");

(iv) granting adequate protection to Hercules, in its capacity as the Debtor's prepetition lender

(the "Prepetition Lender") under that certain Loan and Security Agreement, dated December 3,

2013 (as amended, restated, supplemented or otherwise modified from time to time (the

"Prepetition Loan Agreement"; and together with each loan and security document executed in

connection with the Prepetition Loan Agreement, the "Prepetition Loan Documents"); (v)

granting adequate protection to any other prepetition creditors of the Debtor holding valid,

perfected, enforceable, continuing and non-avoidable pre-petition liens on DIP Collateral (as

defined below): (vi) granting to the DIP Lender a priming lien and superpriority administrative

expense claim pursuant to section 364 of the Bankruptcy Code; and (vii) setting a date and time

for the Final Hearing.

In support of this Motion, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

1.  A detailed description of the Debtor and the circumstances which necessitated the

filing of its bankruptcy petition are set forth in the Declaration of John L. Palmer in Support of

Chapter 11 Petition and First Day Motions (the "Palmer Declaration"), which is incorporated

herein by reference.

2.  Of particular relevance for purposes of this Motion, it is important to understand that,

for some time, the Debtor has been experiencing a fundamental weakness in its business and an

acute shortage of liquidity and that, ultimately, those factors have combined to cause the Debtor

to conclude that it cannot survive as a going concern. While the Debtor cannot survive as a going

concern, it does have certain businesses that it believes should be attractive to the right buyer. However, (a) given its capital structure and the likely value of its businesses, the Debtor concluded that any sale would have to be effected under Section 363 of the Bankruptcy Code, and (b) in order to survive to the closing of any sale, the Debtor needs liquidity through the use of cash collateral and additional financing.

3.   Based on the foregoing, the Debtor filed the instant bankruptcy proceeding and anticipates filing a motion seeking to sell substantially all of its assets on an expedited basis. Indeed, as a condition to the Prepetition Lender's consent to the use of its cash collateral and the DIP Lender's consent to extend the necessary financing to sustain operations and pursue a sale process, the auction for the sale of the Debtor's assets has to occur no later than December 19, 2014.

4.   By this Motion, the Debtor seeks authority to use its cash collateral[3] and to obtain senior secured superpriority financing (the "DIP Financing") from the DIP Lender pursuant to the terms and conditions described in the Interim Order and the DIP Termsheet, solely to pay the ordinary and necessary expenses itemized in the budget attached as Exhibit 2 to the Interim Order (the "Budget").

5.   Among other things, the DIP Financing provides for term loan advances in an aggregate principal amount of $350,000, $250,000 of which will be available to the Debtor on an interim basis provided, however, that of the said $250,000 available on an interim basis, the second $150,000 shall be advanced solely in the DIP Lender's discretion.

---

[3]    It is important to note that (a) the Prepetition Lender and the DIP Lender have consented to the use of cash collateral, subject to the terms and conditions of the DIP Termsheet, the Budget (as defined herein) and the Interim Order and Final Order, and (b) no person or entity other than the Prepetition Lender and the DIP Lender have an interest in the Debtor's cash collateral.

3

6.  To facilitate the Debtor's prospects for maximizing the value of its assets, the Debtor must access its cash collateral and the DIP Financing.  Indeed, absent the ability to use its cash collateral and access the DIP Financing, the Debtor will be immediately unable to meet its direct operating expenses and will have to no choice but terminate all of its operations and employees. That would undoubtedly cause immediate and irreparable harm to the Debtor's estate and stakeholders by eliminating the possibility of realizing going concern value for any of the Debtor's business lines.

## JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

7.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2).

8.  The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2.

## BACKGROUND

**A.  Introduction**

9.  On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 the Bankruptcy Code.  The Debtor is operating its businesses and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

11.  The factual background relating to the Debtor's commencement of these Chapter 11 Cases is set forth in detail in the Palmer Declaration filed contemporaneously herewith and incorporated herein by reference.

**B.  Prepetition Facility**

12.  As of the Petition Date, the Debtor was indebted and liable to the Prepetition Lender in the aggregate principal amount of approximately $7,300,000 in respect of loans made by the Prepetition Lender under the Prepetition Loan Agreement (such amount, together with all other Obligations, as defined in the Prepetition Loan Agreement, due and payable thereunder, including accrued interest, the "Prepetition Debt"), which Prepetition Debt is secured by properly perfected, first priority security interests in and liens on (the "Prepetition Security Interest") substantially all of the Debtor's property (the "Prepetition Collateral").

**C.  The Proposed DIP Termsheet**

13.  As noted above, prior to the Petition Date, the Debtor's management determined that the Debtor would have an immediate and urgent need for additional working capital after the commencement of this bankruptcy case.

14.  In order to better understand the possibilities that may exist, Debtor's counsel questioned counsel to the Prepetition Lender whether the Prepetition Lender would be willing to be primed by a third party debtor-in-possession lender. The answer was no.

15.  Understanding the position of the Prepetition Lender, over the last two (2) to three (3) weeks, the Debtor and its professionals sought junior subordinated debtor-in-possession financing in the amount of about $1.0 million from at least three (3) sources other than the Prepetition Lender. Not surprisingly, none of those potential lenders had any interest in providing such a facility.

16.  Contemporaneously with its efforts to arrange for junior secured debtor-in-possession financing, the Debtor engaged in negotiations with the DIP Lender. As a result of those negotiations, the DIP Lender agreed to provide the DIP Financing described in the DIP Termsheet to address the Debtor's anticipated working capital needs and chapter 11 administrative expenses.

17.  Pursuant to Bankruptcy Rule 4001 and Local Rule  4001-2, below is a summary[4] of the terms of the proposed DIP Termsheet:

| | |
|---|---|
| **Debtor** | Baxano Surgical, Inc., the Debtor |
| **Lender** | Hercules Technology Growth Capital, Inc. |
| **Commitment, Availability and Purpose** | A secured term loan credit facility of up to $350,000, of which $250,000 will be available upon entry of the Interim Order provided, however, that of the said $250,000 available upon entry of the Interim Order, the second $150,000 shall be advanced solely in the DIP Lender's discretion.  The DIP Financing is being provided to fund the Debtor's general operating and working capital needs in the ordinary course of business and the administration of this chapter 11 case, consistent with the Budget.  The Debtor is also authorized to use the funds provided by the DIP Financing to pay any fees required to be paid to the Office of the United States Trustee. |
| **Term and Maturity** | The earliest of (a) December 31, 2014; (b) the consummation of a sale(s) of all or substantially all of the Debtor's assets; (c) the entry of an order by the Court approving an alternative DIP Facility; and (d) such later date as the DIP Lender in its sole discretion may agree to in writing with the Debtor. Availability of DIP Financing terminates immediately and |

---

[4]    The summaries and descriptions of the terms and conditions of the DIP Termsheet, the Interim Order, and the Final Order set forth in this Motion are intended solely for information purposes to provide the Court and parties in interest with an overview of the significant terms thereof.  The summaries and descriptions herein are qualified in their entirety by the terms of the DIP Termsheet, the Interim Order, and the Final Order.  In the event there is any conflict between this Motion and (i) the DIP Termsheet, (ii) the Interim Order, or the (iii) Final Order, the DIP Termsheet, the Interim Order, or the Final Order, as applicable, shall control. Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to them in the DIP Termsheet.

| | |
|---|---|
| | prior to the Maturity Date upon the occurrence of a "Termination Event," which is the earliest to occur of (a) 25 days after the entry of the Interim Order (unless a Final Order approved by the DIP Lender has been entered as of such date), (b) the expiration of three (3) business days (the "Default Notice Period") following the provision of written notice to the Debtor (with a copy of such notice provided to counsel for the Debtor, counsel for any Committee, and the U.S. Trustee) upon the occurrence of an Event of Default (as defined in the DIP Term Sheet), and (c) the date on which neither the Interim Order nor the Final Order is in full force and effect. |
| **Interest Rate and Fees** | Interest Rate: 12.5% <br><br> DIP Loan Fee: $14,000 |
| **Conditions Precedent to Closing and Funding** | Budget.  The DIP Lender and the Prepetition Lender shall have received and approved the Budget. <br><br> Interim DIP Order.  The Interim Order shall have been issued in form and substance acceptable to the DIP Lender within 2 business days after the Petition Date , and such Interim Order shall be in full force and effect and shall not have been vacated, stayed, reversed, modified or amended. <br><br> No Default or Event of Default.  No Event of Default shall have occurred. <br><br> First Day Orders.  The "first day" orders sought by the Debtor shall have been entered by the Bankruptcy Court and shall have been in form and substance reasonably satisfactory to the Lender. <br><br> Employment of Tamarack Associates/John Palmer. Tamarack Associates shall have been employed to, among other things, provide the services of John Palmer as Chief Restructuring Officer. |
| **Collateral** | All of the Debtor's presently existing or hereafter acquired property and assets.  **Subject to entry of the Final Order, the collateral for the DIP Financing will include the Debtor's claims and causes of action under 11 U.S.C. §§544, 545, 547, 548 and 549 (the "Avoidance Actions").** The  DIP Liens shall not be subject to Sections 510, 549, 550, or 551 of the Bankruptcy Code and, **subject to entry of the Final Order, the "equities of the case" exception of Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Lender with respect to the Prepetition Agreements or the** |

| | |
|---|---|
| | **Prepetition Collateral**<br><br>DIP Termsheet, P. 7 ("Security"); Interim Order, ¶¶12, 34. |
| **Priority** | First priority senior priming lien and security interest (subject only to the Carve-Out and Permitted Senior Liens) in and to all property of the Debtor provided lien on Avoidance Actions shall only attach following entry of the Final Order. |
| **Limitations on Use of Funds** | Unless otherwise agreed to by the Lender in writing, the proceeds of the DIP Loans shall be used by the Debtor solely for operating working capital purposes and chapter 11 administrative costs in the amounts and otherwise in accordance with and for the purposes provided for in the Budget; <u>provided</u> that the Debtor may be permitted to exceed to the budgeted amount during any budgeted period by a cumulative variance of no more than 10%; and <u>further provided</u> that none of the proceeds of the DIP Loans shall be used to pay the expenses of the Debtor or any Creditors' Committee in any action or to otherwise assert any claims or causes of action against the Lender in any capacity except that the Creditor's Committee may use up to $25,000 of the DIP Loans and/or cash collateral to investigate the amount, validity or enforceability of the Prepetition Loans and the Prepetition Liens. |
| **Validity of Prepetition Lien and Releases** | **The Debtor has stipulated to the amount of the Prepetition Debt and the validity and perfection of the Prepetition Liens and has agreed to release any claims against Prepetition Lender and the DIP Lender. However, such stipulations and releases are not binding on the Debtor's estate if (a) a Creditors' Committee files a Challenge within sixty (60) days of appointment of the Creditors' Committee, or (b) any other party in interest files a Challenge within seventy-five (75) days of entry of the Interim Order.** |
| **Events of Default** | The following are Events of Default under the DIP Termsheet:<br><br>1.     The failure by the Debtor to perform or comply with any term of the DIP Term Sheet, the Interim Order or Final Order.<br><br>2.     The cessation of the DIP Facility to be in full force and effect or the DIP Facility being declared by the Court to be null and void or the validity or |

enforceability of the DIP Facility being contested by the Debtor or the Debtor denying in writing that it has any further liability or obligation under the DIP Facility or the DIP Lender ceasing to have the benefit of the liens granted by the Interim DIP Order or Final DIP Order.

3.   Except as permitted in the Interim Order or Final Order, the entry of any order of the Court granting to any third party a claim or lien pari passu with or senior to that granted to the DIP Lender.

4.   Until the DIP Obligations are repaid in full, the Debtor shall make any payment of principal or interest or otherwise on account of any indebtedness or payables other than the DIP Obligations under the DIP Facility or other than in accordance with the Budget approved by the DIP Lender.

5.   If, as of any reporting date, the Debtor's cumulative sales, cash disbursements and/or receipts from the period from the Petition Date through the end of any calendar month exceeds the permitted variances.

6.   The Debtor fails to make any interest payments due under the Interim Order or Final Order within three (3) business days of when due.

7.   Failure of the Debtor to meet any of the applicable Milestones in the Milestone Schedule (see below).

8.   Failure of Tamarack Associates and John Palmer to continue being employed by the Debtor or to have powers and authorities less than those set forth in any engagement agreement while the DIP Facility and Prepetition Facility remain outstanding and unpaid;

9.   The entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the Debtor filing a motion or not opposing a motion seeking such relief.

10.  The entry of an order dismissing the Chapter 11 Case, or the Debtor filing a motion or not opposing a motion seeking such relief, unless consented to by the DIP Lender.

11/12/2014 SL1 1334032v3 109188.00001

| | |
|---|---|
| | 11. The entry of any order in the Chapter 11 Case or any successor case, which order constitutes the stay, modification, appeal or reversal of the Interim Order or Final Order or which otherwise affects the effectiveness of the Interim Order or Final Order. |
| | 12. The entry of an order in the Chapter 11 Case appointing any examiner having expanded powers or a trustee to operate all or any part of the Debtor's business. |
| | 13. The entry of an order in the Chapter 11 Case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any material (in the DIP Lender's reasonably discretion) property, including the collateral pledged pursuant to the DIP Facility and the Prepetition Liens, of the Debtor or to commence or continue any prepetition litigation against the Debtor involving potential liability not covered by insurance, in excess of $50,000 in the aggregate. |
| | 14. Any judgment or order as to postpetition liability or debt for the payment of money in excess of $50,000 shall be rendered against the Debtor individually or in the aggregate, and the enforcement thereof shall not have been stayed. |
| | 15. Any non-monetary, judgment or order with respect to a postpetition event shall be rendered against the Debtor which does or would reasonably be expected to (i) cause a material adverse change in the financial condition, business, prospects, operations or assets of the Debtor or (ii) have a material adverse effect on the rights and remedies of the DIP Lender hereunder, and there shall be a period of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect. |
| | 16. The Interim DIP Order or Final DIP Order being amended or modified without the consent of the DIP Lender. |
| **506(c) Waiver** | **Subject to the entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of** |

| | |
|---|---|
| | the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in chapter 7 or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral or the Cash Collateral pursuant to Bankruptcy Code sections 506(c), 552(b) or 105(a) or any similar principle of law without the prior written consent of the DIP Lender.<br><br>Interim Order, ¶21 |
| **Carve-Out** | The DIP Termsheet provides for a "Carve Out." The Carve-Out claims are senior to the liens and superpriority administrative expenses granted to the DIP Lender and the Prepetition Lender and are defined to mean: (i) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, (ii) after the occurrence and during the continuance of an Event of Default (as defined in the DIP Term Sheet) and following delivery by the DIP Lender to the professionals retained by the Debtor and the Committee of a written notice (the "Carve Out Trigger Notice") advising that such Event of Default has occurred, all allowed and unpaid professional fees and out-of-pocket disbursements incurred by the Debtor and the Committee on and after delivery of the Carve Out Trigger Notice, that remain unpaid subsequent to the payment of such fees and expenses from available funds remaining in the Debtor's estate for such creditors, in an aggregate amount not exceeding $50,000 (it being understood that such amount shall be made available without regard to the existence of any unused retainer held by any professional), and (iii) all allowed and unpaid professional fees and disbursements (regardless of when such fees and disbursements become allowed by order of the Court) incurred or accrued by the Debtor and the Committee at any time prior to the delivery of a Carve Out Trigger Notice, in an aggregate amount not exceeding the budgeted amounts for such unpaid professional fees and disbursements as reflected in the Budget (it being understood that such amounts shall be made available without regard to the existence of any unused retainer held by any professional), in each of the foregoing clauses (ii) and (iii), to the extent allowed by the Court; provided, however, that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (ii) and (iii), and provided further that the |

| | |
|---|---|
| | Carve-Out shall not reduce the amounts payable to the DIP Lender under the DIP Documents and to the Prepetition Lender under the Prepetition Agreements. |
| **Credit Bidding** | Following entry of the Final Order, the DIP Lender and the Prepetition Lender shall each have the unqualified right to credit bid up to the full amount of the applicable outstanding DIP Obligations and the Prepetition Indebtedness (as applicable) in any sale of the DIP Collateral (or any part thereof) or the Prepetition Collateral (or any part thereof), as applicable. |
| **Sale Milestones** | The following dates are the "milestones" for the Debtor's sale process: <br><br> Filing of Sale Motion and Bid Procedures Motion – On or before November 14, 2014 <br><br> Bid Procedures Hearing – On or before November 26, 2014. <br><br> Bid Deadline – On or before December 17, 2014. <br><br> Auction Date (if necessary) – On or before December 19, 2014. <br><br> Sale Hearing – On or before December 23, 2014. <br><br> Closing – On or before December 31, 2014 |
| **Adequate Protection** | The Prepetition Lender shall be granted adequate protection for, and in equal amount to, the diminution in value of its prepetition security interests in the form of super-priority claims and replacement liens on all assets securing the DIP Facility which replacement liens shall be equal in priority to the DIP Liens and which super-priority claims shall be junior to the Carve-Out and to the super-priority claims granted to the DIP Lender. |
| **Relief from Automatic Stay** | The automatic stay of the ability of the DIP Lender to enforce its rights under the DIP Termsheet, Interim Order and Final Order and of the ability of the Prepetition Lender to enforce its rights under the Prepetition Loan Documents terminates automatically upon the occurrence of a Termination Event, defined above. |

18.  The DIP Lender was unwilling to lend or agree to use of cash collateral on terms other than those set forth in the DIP Termsheet.

19.  The Debtor does not believe that it can obtain other sources of working capital financing on a postpetition basis on terms or conditions more favorable than those contained in the proposed DIP Termsheet.

20.  The Debtor believes that the terms and conditions of the proposed DIP Termsheet are fair and reasonable under the circumstances and that entering into and performing under the DIP Termsheet is in the best interests of its estate and creditors.

## RELIEF REQUESTED

21.  By this Motion, the Debtor respectfully requests entry of the Interim Order and Final Order (to be submitted in advance of the final hearing on the Motion) approving the Debtor's use of cash collateral and incurrence of debtor-in-possession financing on the terms more specifically described in the DIP Termsheet, the Budget, the Interim Order, and the Final Order.

## BASIS FOR RELIEF REQUESTED

### A.  The DIP Termsheet Should Be Approved Under Section 364(c) of the Bankruptcy Code

22.  Section 364 of the Bankruptcy Code "provides bankruptcy courts with the power to authorize post-petition financing for a Chapter 11 debtor-in-possession." *In re Defender Drug Stores, Inc.*, 126 B.R. 76, 81 (Bankr. D. Ariz. 1991). "Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed [section] 364 to provide 'incentives to the creditor to extend post-petition credit.'" *Id.*

23.  In particular, section 364(c) of the Bankruptcy Code establishes the conditions under which a debtor may obtain certain types of secured credit and provides, in pertinent part, as follows:

> (c)     If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt —

(1)     with priority over any or all administrative expenses
        of the kind specified in section 503(b) or 507(b) of
        this title;

(2)     secured by a lien on property of the estate that is not
        otherwise subject to a lien; or

(3)     secured by a junior lien on property of the estate
        that is subject to a lien.

11 U.S.C. § 364(c).

24.   Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of

its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit

and the borrowing is in the best interests of the estates.  *See e.g., In re Simasko Prod. Co.*, 47

B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing stipulation where debtor's best

business judgment indicated financing was necessary and reasonable for benefit of estates).

25.   Courts have articulated a three-part test to determine whether a debtor may obtain

financing under section 364(c) of the Bankruptcy Code:

i.      the debtor is unable to obtain unsecured credit under
        section 364(b) (i.e., by granting a lender administrative
        expense priority);

ii.     the credit transaction is necessary to preserve the assets of
        the estate; and

iii.    the terms of the transaction are fair, reasonable and
        adequate, given the circumstances of the debtor-Debtor and
        the proposed lender.

*See In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above factors

and holding that credit acquired is of significant benefit to the debtor's estate).

### i.  Credit Was Not Obtainable on Better Terms

26.   In satisfying the standards of Bankruptcy Code section 364(c), a debtor need not seek

credit from every available source, but should make a reasonable effort to seek other sources of

14

credit available of the type set forth in sections 364(a) and (b) of the Bankruptcy Code. *See, e.g.,*
*Bray v. Shenandoah Fed. Sav. and Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th
Cir. 1986).

27.  To show that the credit required is not obtainable on an unsecured basis or on better
terms, a debtor need only demonstrate "by a good faith effort that credit was not available
without" the protections of sections 364(c) of the Bankruptcy Code. *Id.* Thus, "[t]he statute
imposes no duty to seek credit from every possible lender before concluding that such credit is
unavailable." *Id.* at 1088; *see also Ames Dep't Stores*, 115 B.R. at 40 (holding that debtor made
a reasonable effort to secure financing where it approached four lending institutions, was rejected
by two, and selected the least onerous financing option from the remaining two lenders).

28.  Indeed, despite reasonable efforts (including inquiries to at least three (3) other
sources), the Debtor found no source of financing other than from the DIP Lender.

29.  The Debtor's efforts to seek alternative financing arrangements satisfy the statutory
requirements of section 364 of the Bankruptcy Code. *See, e.g., In re 495 Cent. Park Ave. Corp.*,
136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992) (debtor seeking financing under section 364(c) of the
Bankruptcy Code made acceptable attempt to obtain less onerous financing by speaking to
several lenders that denied the loan request); *see also In re Trans World Airlines, Inc.*, 163 B.R.
964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset-based
facility were approved because they "reflect[ed] sound and prudent business judgment on the
part of TWA ...  [were] reasonable under the circumstances and in the best interest of TWA and
its creditors").

### ii.  The DIP Termsheet is Necessary to Preserve Assets of the Estate

30.  The Debtor believes that the funds made available through the DIP Financing, when combined with the Debtor's use of its cash collateral, will be adequate to pay all administrative expenses due and payable during the postpetition periods.

31.  It is essential that the Debtor obtain the DIP Financing to provide the Debtor's various stakeholders, including employees, vendors, service providers and other key constituencies, with confidence in the Debtor's ability to satisfy its obligations on a going forward basis and, thereby, to preserve the opportunity to sell its assets on a going concern basis.

### iii.  The Terms of the DIP Termsheet Are Fair, Reasonable and Appropriate

32.  As discussed above, the terms and conditions of the proposed DIP Termsheet are fair and reasonable under the circumstances

### B.  The DIP Termsheet Should Be Approved Under Section 364(d) of the Bankruptcy Code

33.  When a debtor is not able to obtain financing pursuant to the provisions of section 364(c) of the Bankruptcy Code, the debtor may obtain such financing that is secured by a senior or equal lien to existing liens against property of the estate.  11 U.S.C. § 364(d). Section 364(d) of the Bankruptcy Code provides that a court may authorize a debtor to obtain such priming or equal debt provided that:  (i) the debtor is not able to obtain credit otherwise; and (ii) the lien being primed or diluted is adequately protected.  *Id.*

34.  As explained above, the Debtor does not have any viable alternatives to the DIP Financing and the DIP Lender was unwilling to provide credit unless secured by a lien which would prime the Prepetition Lender. *See Shaw Indus., Inc. v. First Nat'l Bank of PA (In re Shaw Indus., Inc.)*, 300 B.R. 861, 863, 865 (Bankr. W.D. Pa. 2003) (finding that where debtor made

efforts by "contacting numerous lenders" and was unable to obtain credit without a priming lien, it had met its burden under section 364(d)).

35.  Further, the Prepetition Lender (the only lender being primed) has agreed to be primed by the DIP Facility, as long as it is provided adequate protection as described in the DIP Termsheet.

### C.  Cash Collateral and Adequate Protection

36.  In addition to the need for debtor-in-possession financing, the Debtor's other pressing need is for the use of cash collateral.  The Debtor requires use of cash collateral, together with the proceeds of the DIP Financing, to be able to fund operating expenses, including payroll, and to pay vendors to ensure a continued supply of goods essential to the Debtor's continued viability.

37.  The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code.  Section 363(c)(1) provides, in pertinent part, that:

> [i]f the business of the debtor is authorized to be operated under section ...  1108 ...  and unless the court orders otherwise, the trustee [or debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).  However, with respect to cash collateral, section 363(c)(2) of the Bankruptcy Code permits the debtor to use, sell, or lease cash collateral under subsection (c)(1) only if (i) "each entity that has an interest in such cash collateral consents" or (ii) "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363 (c)(2).

38. Here, the DIP Lender and the Prepetition Lender, the only persons or entities with an interest in the Debtor's cash collateral, consent to the Debtor's use of cash collateral solely on the terms set forth in the DIP Termsheet, Budget, Interim Order, and Final Order.

39. Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property used ... or proposed to be used ... by a [debtor-in-possession], the court, with or without a hearing, shall prohibit or condition such use ...  as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).  Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief.  *See* 11 U.S.C. § 361.

40. The proposed adequate protection to be provided to the Prepetition Lender in consideration of its agreement to be primed and to the use of its cash collateral, consisting of (a) periodic payments of interest as provided for in the Budget, and (b) replacement liens and superpriority claims is sufficient to account for any diminution in the value of the Prepetition Lender's collateral, is fair and reasonable under the circumstances.

41. Based on the foregoing, the Debtor respectfully requests that the Court authorize the Debtor to provide adequate protection to the Prepetition Lender in accordance with the terms set forth in the DIP Termsheet, the Interim Order and the Final Order.

**D.  Good Faith**

42. The DIP Termsheet was negotiated by the parties in good faith and at arms'-length. Therefore, the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code to the extent any or all of the provisions of the DIP Termsheet, or any order of this Court pertaining thereto, are hereafter modified, vacated, stayed or terminated by subsequent order of this or any other court.

11/12/2014 SL1 1334032v3 109188.00001

**E.  Modification of Automatic Stay**

43.  Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition.  The proposed DIP Termsheet contemplates a modification of the automatic stay to the extent necessary to permit the DIP Lender to perform certain ministerial acts act authorized under the DIP Termsheet, the Interim Order and the Final Order.

44.  Stay modification provisions of this kind are ordinary and standard features of postpetition debtor-in-possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances.  The Debtor respectfully requests that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the DIP Termsheet and the Interim Order.

**F.  Interim Approval of the DIP Termsheet is Necessary to Prevent Immediate and Irreparable Harm**

45.  Bankruptcy Rule 4001(c)(2) governs the procedures for obtaining authorization to obtain postpetition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion.  If the motion so requests, the court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. Proc. 4001(c)(2).

46.  The Debtor respectfully requests that the Court schedule and conduct a preliminary hearing on the motion and authorize the Debtor from and after entry of the Interim Order until the Final Hearing to obtain credit and use cash collateral on the terms contained in the DIP Termsheet, as approved by the Interim Order.

47.  In examining requests for interim relief under the immediate and irreparable harm standard, courts apply the same business judgment standard applicable to other business decisions.  *See, e.g., Ames Dep't Stores*, 115 B.R. at 36; *Simasko*, 47 B.R. at 449.  After the 14-day period, the request for financing is not limited to those amounts necessary to prevent the destruction of the debtor's business, and the debtor is entitled to borrow those amounts that it believes are prudent to the operation of its business. *Ames Dep't Stores*, 115 B.R. at 36.

48.  Immediate and irreparable harm would result if the relief requested herein is not granted on an interim basis.  As described in detail herein and the Palmer Declaration, the Debtor has an immediate need to obtain access to liquidity to preserve and maintain the value of its estate for the benefit of all parties in interest.

49.  The Debtor's next payroll is due to be paid on November 14, 2014.

50.  Based on the foregoing, the Debtor requests that, pending the Final Hearing, the Court schedule and conduct an interim hearing as soon as practical after the Petition Date, but in any event not later than the morning of November 14, 2014, to consider the Debtor's request for authorization to obtain interim financing and use cash collateral under the DIP Termsheet.

**G.  Request and Notice Procedures for the Final Hearing**

51.  Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001- 2(c), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

52.  Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests that it be authorized to provide notice of the Final Hearing by serving a copy of this Motion on the parties identified in paragraph 53, below.  The Debtor submits that such notice is sufficient and requests that this Court find that no further notice of the Final Hearing and Final Order is required.

## **NOTICE**

53.  The Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed by the Debtors pursuant to Bankruptcy Rule 1007(d); (c) Hercules Technology Growth Capital, Inc., the Debtor's secured pre-petition lender and proposed post-petition lender, Legal Department, Attn: Chief Legal Officer and Bryan Jadov, 1100 Hamilton Avenue, Suite 310, Palo Alto, CA 94301; (d) Cole Shotz, 25 Main Street | Hackensack, NJ, 07601, Attn: Stuart Komrower and Ilana Volkov, counsel to Hercules Technology Growth Capital, Inc.; (d) Internal Revenue Service; (e) Securities and Exchange Commission; and (f) Delaware Department of Justice Division of Securities.

54.  In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

## **NO PRIOR REQUEST**

55.  No prior motion for the relief requested herein has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, based upon the foregoing, the Debtor respectfully requests that the Court (a) authorize the Debtor to enter into and incur credit pursuant to the terms of the DIP Termsheet; (b) enter the Interim Order, substantially in the form annexed hereto as Exhibit A and enter the Final Order substantially in the form to be filed before the Final Hearing; (c) authorize the Debtor's use of cash collateral; and (d) schedule the Final Hearing and approve the form of notice thereof.

Dated:  November 12, 2014        STEVENS & LEE


By:  /s/ John D. Demmy
    Joseph H. Huston (DE Bar No. ___)
    John D. Demmy (DE Bar No. 2802)
    1105 N. Market Street, Suite 700
    Wilmington, Delaware 19801
    Tel. (302) 425-3308
    Fax (610) 371-8515
    Email:  jdd@stevenslee.com

        and

    Robert Lapowsky
    John C. Kilgannon
    1818 Market Street
    29th Floor
    Philadelphia, Pennsylvania  19103
    (215) 575-0100
    rl@stevenslee.com
    jck@ stevenslee.com

22