## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | x<br>:<br>: | Chapter 11 |
| BAXANO SURGICAL, INC., | :<br>: | |
| Debtor. | :<br>:<br>: | Case No. 14-12545 (CSS)<br>Re: D.I. 8 |
| | x | |

**FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364, (II) GRANTING
LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDER PURSUANT
TO 11 U.S.C. §§ 364 AND 507, (III) AUTHORIZING USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363, (IV) PROVIDING ADEQUATE PROTECTION TO
PREPETITION SECURED LENDER PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364,
AND 507, AND (V) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY
RULES 4001(B) AND (C) AND LOCAL BANKRUPTCY RULE 4001-2**

Upon the motion (the "Motion"), dated November 12, 2014, of Baxano Surgical, Inc., as

a debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Case"),

pursuant to Sections 105, 361, 362, 363, 364, and 507 of Title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), seeking, among other things, entry of a final order (this "Final Order"):

(a)  authorizing the Debtor to obtain postpetition financing (the "DIP

Financing") consisting of a term loan, multi-draw financing facility in an aggregate principal

amount not to exceed $350,000, which amount has been increased to $425,000, plus all interest

thereon (the "DIP Facility"), with Hercules Technology Growth Capital, Inc. (the "DIP

Lender");

(i)  authorizing the Debtor to execute and deliver, and incur all

liabilities and obligations under that certain Debtor in Possession Term Sheet dated as of

1

November 12, 2014, as amended since the entry of the Interim Orders (defined below), which term sheet is attached hereto as <u>Exhibit 1</u> (as amended, modified, restated, or supplemented in accordance with the terms thereof or hereof, the "<u>DIP Term Sheet</u>" and, together with the Budget attached hereto as <u>Exhibit 2</u> (the "<u>Budget</u>"), all instruments, financing statements and documents as may be executed and delivered in connection with or relating to the DIP Facility, the Interim Orders, this Final Order, and any certificate or other document made or delivered pursuant hereto or thereto, collectively, the "<u>DIP Documents</u>"), and perform all such other and further acts as may be required in connection with the respective DIP Documents;

(b)  authorizing the Debtor to use proceeds of the DIP Facility solely as expressly permitted in the DIP Documents, including to fund the Debtor's operations and conduct and pursue a sale and liquidation process;

(c)  granting automatically perfected security interests in and liens on all of the DIP Collateral (as defined below) to the DIP Lender, and granting superpriority administrative expense status to the DIP Obligations (as defined below), in each case on the terms and subject to the relative priorities set forth in the DIP Documents;

(d)  authorizing the Debtor to use Cash Collateral (as defined below), subject to the DIP Documents;

(e)  granting adequate protection to the Prepetition Lender (as defined below) and any other secured party holding valid, perfected and non-avoidable liens as of the Petition Date;

(f)  authorizing the Debtor to pay the principal, interest, fees, expenses, disbursements, and other amounts payable under the DIP Documents as such amounts become due and payable;

(g)  vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the other DIP Documents;

(h)  scheduling a final hearing (the "Final Hearing") to consider entry of this Final Order and, in connection therewith, approving the form and manner of notice of the Final Hearing; and

(i)  granting the Debtor such other and further relief as is just and proper;

(j)  and the Court having considered the Motion, the exhibits attached thereto, the First Day Declaration of _John Palmer in Support of Chapter 11 Petition and First Day Pleadings (the "First Day Declaration"); and, following an interim hearing on the Motion held on November 14, 2014 (the "First Interim Hearing"), the Court having entered an order granting the Motion on an interim basis on November 18, 2014 [Docket No. 33] (the "First Interim Order"); and, following a second interim hearing on the Motion held on December 10, 2014 (the "Second Interim Hearing" and, together with the First Interim Hearing, the "Interim Hearings"), the Court having entered a second order granting the Motion on an interim basis on December 12, 2014 [Docket No. 144] (the "Second Interim Order" and, together with the First Interim Order, the "Interim Orders"); and, upon all of the pleadings filed with the Court, all evidence adduced in support of the Interim Orders and this Final Order, the arguments of counsel on the record of the Interim Hearings and the Final Hearing held on December 22, 2014, and all of the proceedings heretofore held before the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

3

**IT IS HEREBY FOUND, DETERMINED, ORDERED, AND ADJUDGED, that:**[1]

    1. **Motion Granted**.  The Motion is GRANTED, on a final basis, on the terms and conditions set forth herein.  All objections to the entry of this Final Order that have not been withdrawn are hereby overruled.

    2. **Commencement of the Case**.  On November 12, 2014 (the "Petition Date"), the Debtor commenced the Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Case.

    3. **Jurisdiction and Venue**.  This Court has jurisdiction over the Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    4. **Committee Formation**.  On November 24, 2014, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Case (the "Committee").

    5. **Notice**.  Notice of the relief sought by the Motion and of the First Interim Hearing was served via facsimile, electronic mail, and/or overnight delivery on the following parties: (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the Office of the United States Attorney for the District of Delaware; (v) those entities or individuals listed on the Debtor's list of 20 largest unsecured creditors; and (vi) all known parties asserting a lien against or security interest in the Debtor's

---

[1]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

assets. Further, notice of the Second Interim Hearing was provided to: (a) the Office of the United States Trustee, (b) counsel to the Committee and (c) Hercules. In addition, the Motion, the Second Interim Order and notice of the Final Hearing was served by overnight mail, postage prepaid on the following: (A) the Office of the United States Trustee; (B) the United States Securities and Exchange Commission; (C) the Internal Revenue Service; (D) the Office of the United States Attorney for the District of Delaware; (E) the Committee; and (F) all other known parties asserting a lien against the Debtor's assets, and (G) all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by overnight mail, first class postage prepaid.

6. **Debtor's Stipulations**. Subject to paragraph 23 of this Final Order, the Debtor admits, stipulates and agrees that:

(a) Prior to the commencement of the Case, the Debtor entered into that certain Loan and Security Agreement dated as of December 3, 2013, as amended (the "Prepetition Loan Agreement") with Hercules Technology Growth Capital, Inc., as prepetition lender (the "Prepetition Lender").

(b) The Prepetition Loan Agreement is a valid and binding agreement and an obligation of the Debtor who is a party thereto. The Debtor's indebtedness under the Prepetition Loan Agreement as of the Petition Date (the "Prepetition Indebtedness") includes any and all principal amounts owing or outstanding thereunder, interest on, fees and other costs, expenses and charges owing in respect of such amounts (including, without limitation, any reasonable fees and expenses of attorneys, accountants, and financial advisors to the extent chargeable or reimbursable pursuant to the Prepetition Loan Agreement or related agreements).

(c) As of November 12, 2014 the Debtor was indebted to the Prepetition Lender under the Prepetition Loan Agreement in the aggregate amount of approximately

$7,642,032.80 inclusive of accrued interest, fees and other costs, expenses and charges due and payable thereunder. The Prepetition Indebtedness, including the amounts specified in this subparagraph 6(c), constitutes the legal, valid, and binding obligation of the Debtor, enforceable in accordance with its terms, without objection, offset, defense, or counterclaim of any kind or nature. The Debtor has not asserted, nor shall it assert, any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Indebtedness. The Prepetition Indebtedness and any amounts previously paid to the Prepetition Lender pursuant to the terms of the Prepetition Loan Agreement on account thereof or with respect thereto are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in this Final Order, or the other DIP Documents.

(d)  To secure the Prepetition Indebtedness under the Prepetition Loan Agreement, the Debtor granted security interests in and continuing liens on (collectively, the "Hercules Prepetition Liens") substantially all the Debtor's assets and property as specifically set forth in the Prepetition Loan Agreement (the "Prepetition Collateral") to and/or for the benefit of the Prepetition Lender and executed and delivered other prepetition collateral documents in connection therewith (the "Collateral Documents", and together with the Prepetition Loan Agreement, collectively, the "Prepetition Agreements").

(e)  The Collateral Documents are valid and binding agreements and obligations of the Debtor, and the Hercules Prepetition Liens constitute valid, binding, enforceable, and perfected security interests and "Liens," as that term is defined in Bankruptcy Code Section 101(37) ("Liens"), which are not subject to avoidance, recharacterization,

6

recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in this Final Order.

(f) The Prepetition Lender took all steps to properly perfect its security interests in and Liens on the Prepetition Collateral by taking possession of, or obtaining control over, certain assets and by the filing of UCC1 financing statements and/or other required documents with the proper state offices for the perfection of such security interests and Liens.

(g) Without the requirement or need to file any proof of claim with respect thereto, (i) the Prepetition Indebtedness under the Prepetition Agreements shall constitute allowed, fully secured prepetition claims for all purposes in the Case and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceeding if the Case is converted to a case under chapter 7 of the Bankruptcy Code or in any proceedings related to any of the foregoing (the "Successor Case"), (ii) the Hercules Prepetition Liens shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination or avoidance for all purposes in this Case and any Successor Case, and (iii) the Prepetition Indebtedness, the Hercules Prepetition Liens and prior payments on account of or with respect to the Prepetition Indebtedness shall not be subject to any other or further claim, cause of action, objection, contest, setoff, defense, or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of the Debtor, except as provided in this Final Order.

7. **Findings Regarding the DIP Financing**.

(a) An immediate and critical need exists for the Debtor to obtain postpetition financing and to use Cash Collateral to continue the operation of its business and preservation of the going concern value of the Debtor's assets pending a sale of those assets.

12/18/2014 SL1 1340171v3 109188.00001

However, the use of cash, that is property of the Debtor and that constitutes "cash collateral" as defined in Section 363(a) of the Bankruptcy Code, including any and all prepetition and, subject to Section 552 of the Bankruptcy Code, postpetition proceeds of any collateral pledged pursuant to the Prepetition Agreements (the "Prepetition Collateral") that is property of the Debtor ("Cash Collateral") alone would be insufficient to meet the Debtor's immediate postpetition liquidity needs.

(b)    The Debtor is unable to obtain the required funds (i) in the forms of (1) unsecured credit or debt allowable under Section 503(b)(1) of the Bankruptcy Code, (2) an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code, (3) unsecured debt having the priority afforded by Section 364(c)(l) of the Bankruptcy Code, or (4) debt secured only as described in Section 364(c)(2) or (3) of the Bankruptcy Code, or (ii) on terms more favorable than those embodied in the DIP Term Sheet and the other DIP Documents. The DIP Lender is prepared to continue providing the DIP Financing solely on the terms set forth in the DIP Term Sheet, this Final Order and the other DIP Documents.

(c)    The terms of the DIP Financing are fair, just, and reasonable under the circumstances, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms of the DIP Financing have been negotiated in good faith and at arm's length by and between the Debtor and the DIP Lender. Any credit extended or other indebtedness or liabilities arising under, in respect of, or in connection with the DIP Financing, the DIP Term Sheet, the Interim Orders, this Final Order, or any other DIP Financing Document, shall be deemed to have been extended in "good faith" by the DIP Lender as that term is used in Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections afforded by Section 364(e) of the

Bankruptcy Code, and the DIP Lender's claims, the DIP Superpriority Claims (as defined below), the DIP Liens (as defined below), and other protections granted pursuant to the Interim Orders and this Final Order, and the other DIP Documents, shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Final Order or any portion hereof is vacated, reversed, amended, or modified, on appeal or otherwise.

(d)  The relief requested in the Motion is necessary, essential, and appropriate for the management and preservation of the Debtor's assets and property and is in the best interests of the Debtor, its estate and creditors.  Absent the relief granted herein, the Debtor's estate will be immediately and irreparably harmed.  Accordingly, good, adequate, and sufficient cause has been shown to justify the relief granted herein and the immediate entry and effectiveness of this Final Order pursuant to Bankruptcy Rules 4001(b) and (c), and Local Rule 4001-2.

8.  **Authorization of the DIP Financing**.

(a)  The DIP Documents, including the DIP Term Sheet and the Budget, are approved, and the Debtor is hereby authorized to execute and enter into, deliver, and perform all obligations under, the DIP Documents on a final basis.  Unless the Court orders otherwise, this Final Order and the other DIP Documents shall govern the respective financial and credit accommodations to be provided to the Debtor by the DIP Lender in connection with the DIP Financing.

(b)  The Debtor is hereby immediately authorized to borrow up to the total sum available under the DIP Facility in an amount not to exceed $425,000 on the terms and conditions expressly provided in this Final Order and the other applicable DIP Documents,

9

including the DIP Term Sheet and Budget. The Debtor is authorized to pay and perform all "DIP Obligations" as that term is defined below.

(c)  Notwithstanding the Budget, so long as no Termination Event (as defined below) has occurred, the Debtor shall be authorized to use the proceeds of the DIP Loans in accordance with the Budget and the other applicable DIP Documents in an amount that would not cause the Debtor to use Cash Collateral or proceeds of the DIP Loans in an aggregate amount greater than, at any given time and on a cumulative basis from the Petition Date, 110% of the Budget (a "Permitted Variance").

(d)  In furtherance of the foregoing and without further approval of this Court, the Debtor is hereby authorized to perform all acts, to make, execute and deliver all instruments and documents, and to pay all related fees, that may be required or necessary for the Debtor's performance of its obligations under the DIP Financing, including, without limitation:

(i)  the execution, delivery, and performance of the respective DIP Documents;

(ii)  the non-refundable payment of principal and interest under, and any fees referred to in, the respective DIP Documents, and such costs and expenses as may be due in accordance with the respective DIP Documents; and

(iii)  the performance of all other acts required under, or in connection with, the DIP Documents.

(e)  All of the DIP Liens and the Adequate Protection Liens (each as defined below) shall be effective and perfected as of the date of entry of this Final Order without the necessity of the execution, recording, or filing of security agreements, pledge agreements, financing statements, or other agreements or instruments.

12/18/2014 SL1 1340171v3 109188.00001

(f)  The DIP Term Sheet and the DIP Obligations (as defined below) constitute valid, binding, and non-avoidable obligations of the Debtor enforceable against the Debtor and its successors and assigns in accordance with the terms of this Final Order and the other DIP Documents, and shall survive the dismissal of this Case or the conversion of this Case to a Successor Case.

(g)  No obligation, payment, transfer, or grant of security under the Interim Orders, this Final Order or the other DIP Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity, except as provided in this Final Order or the other DIP Documents.

(h)  For purposes of this Final Order, the term "DIP Obligations" shall mean all loans made to the Debtor pursuant to the DIP Term Sheet (the "DIP Loans"), all other "DIP Obligations" (as defined in the DIP Term Sheet), all interest thereon and all fees, costs, expenses, indemnification obligations, and other liabilities, owing by the Debtor to the DIP Lender in accordance with and relating to the Interim Orders, this Final Order or the other DIP Documents relating to the DIP Facility.

(i)  The DIP Loans shall (i) be evidenced by the books and records of the DIP Lender and, although not required, upon the request of the DIP Lender, a note executed and delivered to the DIP Lender by the Debtor in accordance with the terms of the DIP Documents, (ii) bear interest and incur fees at the rates set forth in the DIP Term Sheet, (iii) be secured in the

manner specified below and under the applicable DIP Documents, (iv) be payable in accordance with the applicable DIP Documents, and (v) otherwise be governed by the terms set forth in this Final Order and the other DIP Documents.

(j) The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application, or order of the Court to the extent necessary to permit the DIP Lender, subject in all respects to the DIP Documents, to perform any act authorized or permitted under or by virtue of this Final Order or any of the other DIP Documents, including, without limitation, (i) to implement the DIP Financing authorized by this Final Order and pursuant to the terms of the DIP Documents, (ii) to take any act to create, validate, evidence, attach, or perfect any Lien, security interest, right, or claim in the DIP Collateral, and (iii) to assess, charge, collect, advance, deduct, and receive payments with respect to the respective DIP Obligations, including, without limitation, all principal, interest, fees, costs, and expenses permitted under the DIP Documents, and to apply such payments to the DIP Obligations pursuant to this Final Order and the other DIP Documents.

9. **Conditions Precedent**.  The DIP Lender shall have no obligation to make any DIP Loans or any other financial accommodation under the respective DIP Documents unless the conditions precedent to make such extensions of credit under the respective DIP Documents have been satisfied in full or waived in accordance with such DIP Documents.

10. **Use of DIP Facility Proceeds**.  The Debtor shall use the proceeds of the DIP Facility solely to fund the Debtor's operations and to conduct and pursue a sale and liquidation process in accordance and subject to the Budget and the other DIP Documents.

12/18/2014 SL1 1340171v3 109188.00001

11. **DIP Superpriority Claims**. Subject to paragraph 12 below, as applicable, and the Carve Out, pursuant to Section 364(c)(1) of the Bankruptcy Code, the DIP Obligations constitute (without the need to file a proof of claim) superpriority claims (the "DIP Superpriority Claims") against the Debtor, with priority over any and all administrative expenses of the Debtor, whether now existing or hereafter arising or incurred, of any kind whatsoever, including any and all administrative expenses or other claims of the kind specified in or arising under Sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c), 507, 546(c), 552(b), 726, 1113, 1114, or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment, whether now in existence or hereafter incurred by the Debtor, and shall at all times be senior to the rights of the Debtor, the Debtor's estate, and any successor trustee, estate representative, or any creditor, in the Case or any Successor Case. The DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition assets of the Debtor, including, but not limited to, the DIP Collateral and the Prepetition Collateral.

12. **DIP Liens**.

(a) As security for the full and timely payment of the DIP Obligations, the DIP Lender is hereby granted, pursuant to Sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable, and fully perfected security interests in and liens (collectively, the "DIP Liens") upon all DIP Collateral (as defined below), which shall (i) constitute first-priority security interests in and Liens upon all DIP Collateral (as defined below) that, subject to (iv) below, is not otherwise subject to any valid, enforceable, and non-avoidable Liens, which Liens are not subject to subordination, in existence on the Petition Date and were either properly perfected as of the Petition Date or subsequently perfected pursuant to Section

13

546(b) of the Bankruptcy Code (collectively, the "Permitted Senior Liens"), (ii) be senior to and prime the Hercules Prepetition Liens on Prepetition Collateral, (iii) be senior to and prime all Adequate Protection Liens (as defined below), except for the Hercules Adequate Protection Lien, which shall be equal in priority to the DIP Liens, and (iv) be subordinate to the Carve Out (as defined below) and the Permitted Senior Liens.

      (b)  As used herein, "DIP Collateral" shall mean all assets and property of the Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, general intangibles, instruments, equipment, accounts, and documents, all goods, inventory and fixtures, all documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, tradenames and other intellectual property, all equity interests, all books and records relating to the foregoing, all other personal and real property of the Debtor, and all other collateral pledged under the DIP Financing Documents, and any actions under Sections 544, 545, 547, 548 and 550 of the Bankruptcy Code (the "Avoidance Actions"), and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of Delaware (and, if defined in more than one Article of such Uniform Commercial Code, shall have the meaning given in Article 9 thereof)).

      (c)  The DIP Liens shall continue to be effective immediately upon entry of this Final Order.

12/18/2014 SL1 1340171v3 109188.00001

13. **Priority of Liens**.

(a)  The DIP Liens and the DIP Superpriority Claims are and shall be at all times senior and prior in all respects to the Adequate Protection Liens (as defined below) other than the Hercules Adequate Protection Liens (as defined below) and the Hercules Prepetition Liens on the DIP Collateral.  The DIP Liens and the DIP Superpriority Claims are and shall be at all times of equal priority with the Hercules Adequate Protection Liens (as defined below).

(b)  The DIP Liens shall constitute valid, enforceable, non-avoidable, and duly perfected first-priority security interests in and Liens upon the DIP Collateral, junior and subject only to any Permitted Senior Liens (but only with respect to property that was encumbered by Permitted Senior Liens on the Petition Date), and the Carve Out.

(c)  The DIP Liens shall not be (i) subject to any Lien that is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code or (ii) except as to the Permitted Senior Liens (but only with respect to property that was encumbered by Permitted Senior Liens on the Petition Date), subordinated to or made *pari passu* with any other Lien under Section 364(d) of the Bankruptcy Code or otherwise, including by any order heretofore or hereafter entered in the Case or any Successor Case.

14. **Validity of Liens**.

(a)  In no event shall (i) any Lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code, or (ii) any person or entity who pays (or through the extension of credit to the Debtor, causes to be paid) any of the respective DIP Obligations, be subrogated, in whole or in part, to any rights, remedies, claims, privileges, Liens or security interests granted in favor of, or conferred upon the DIP Lender by the terms of this Final Order or any of the other DIP Documents, until all of the

DIP Obligations are paid in full in cash in accordance with this Final Order or any of the other DIP Documents.

(b)  The DIP Liens and the DIP Superpriority Claims shall continue in any Successor Case for the Debtor under any chapter of the Bankruptcy Code, and all Liens, security interests, and claims shall maintain their priority as provided in this Final Order.

15.  **Carve Out**.  Notwithstanding anything in this Final Order, any other DIP Documents, or any other order of this Court to the contrary, the Hercules Prepetition Liens and all claims and Liens granted hereunder to or for the benefit of the DIP Lender, including the DIP Superpriority Claims and the DIP Liens, and to the Adequate Protection Parties (as defined below), including the Adequate Protection Liens and any Adequate Protection Superpriority Claims (as defined below), shall be subject to payment of the Carve Out.  As used in this Final Order, the term "Carve Out" means: (a) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate, (b) after the occurrence and during the continuance of an Event of Default (as defined in the DIP Term Sheet) and following delivery by the DIP Lender to the professionals retained by the Debtor, and the Committee, and the U.S. Trustee of a written notice advising that such Event of Default has occurred (the "Carve Out Trigger Notice"), all allowed and unpaid professional fees and out-of-pocket disbursements incurred by the Debtor and the Committee on and after delivery of the Carve Out Trigger Notice, that remain unpaid subsequent to the payment, pro rata with other nonpriority administrative creditors, of such fees and expenses from available funds remaining in the Debtor's estate for such creditors, in an aggregate amount not exceeding $50,000 (it being understood that such amount shall be made available without regard to the existence of any unused retainer held by

16

any professional) (the "Post-Trigger Carve Out Amount"), and (c) all allowed and unpaid professional fees and disbursements (regardless of when such fees and disbursements become allowed by order of the Court) incurred or accrued by the Debtor and the Committee at any time prior to the delivery of a Carve Out Trigger Notice, in an aggregate amount not exceeding the budgeted amounts for such unpaid professional fees and disbursements as reflected in and limited by the Budget (it being understood that such amount shall be made available without regard to the existence of any unused retainer held by any professional and that, to the extent any fees and expenses of Tamarack and the professionals retained by the Debtor and the Committee are ultimately allowed (or, in the case of Tamarack, paid) in amounts less than their respective budgeted amounts, the excess budgeted amounts shall be added to the amounts budgeted for such professionals and/or Tamarack who are over-budget pro rata based on the amounts by which each is over-budgeted), in each of the foregoing clauses (b) and (c), to the extent allowed by the Court; provided, however, that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (b) and (c), and provided further that the Carve Out shall not reduce the amounts payable to the DIP Lender under the DIP Documents and to the Prepetition Lender under the Prepetition Agreements, and provided further that, in the event of a sale of the Debtor's assets pursuant to Debtor's Motion for Orders (I) (A) Approving Bidding Procedures, (B) Approving Forms of Sale Notice and Assumption/Cure Notice, (C) Approving Procedures for Assumption and Assignment of Contracts and Leases, (D) Authorizing the Debtor to Designate a Stalking Horse and Provide Bid Protections, and (E) Setting the Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of the Debtor's Assets, and (B) the Assumption and Assignment of Certain Contracts and Leases (D.I 43), regardless of the date of such sale, the Carve Outs for

17

Tamarack, professionals retained by the Committee and professionals retained by the Debtor shall be, absent an Event of Default or occurrence of the Maturity Date, the budgeted amounts through February 1, 2015 and the Post-Trigger Carve Out Amount shall be added to the budgeted amounts for each pro rata based on the amounts, if any, by which each is over their individual budget. In addition, in the event the gross cash proceeds from the closing on the sale(s) of the Debtor's assets (excluding gross sale proceeds achieved pursuant to a liquidation of the assets of the Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Code) equal or are greater than five million dollars ($5,000,000.00) then, upon payment to the DIP Lender and the Prepetition Lender of amounts due to them from such sale(s), the Carve Out shall include such amounts owed to employees of the Debtor on account of incentive and retention plans that are approved by final order of this Court, not to exceed one hundred eighty-five thousand dollars ($185,000).

16. **Use of Cash Collateral**.

(a) Subject to the terms and conditions set forth in this Final Order, including paragraph 17 hereof, and the Budget, and effective immediately upon entry of this Final Order, the Debtor is authorized, pursuant to Section 363(c)(2)(A) and (B) of the Bankruptcy Code, to use Cash Collateral (i) in the ordinary course of the Debtor's businesses, (ii) to fund the Debtor's operations and to pursue a sale and liquidation process, all in accordance with the DIP Documents, including the Budget; provided, however, that the Debtor's authorization to use Cash Collateral shall immediately terminate upon the occurrence of a Termination Event (as defined below).

17. **Restriction on Use of Funds**. Notwithstanding anything in this Final Order, any other DIP Documents, or any other order by this Court to the contrary, no proceeds of the DIP Financing, Cash Collateral, Prepetition Collateral, or DIP Collateral, and no portion of the

12/18/2014 SL1 1340171v3 109188.00001

Carve Out, may be used in the Case or any other proceeding of any kind, or in any jurisdiction, directly or indirectly by any Debtor, or any other person or entity, to (a) object to, contest, or raise any defense to, or assert any Challenge (as defined below) to, the validity, perfection, priority, extent, or enforceability of any amounts due under, the DIP Financing, the DIP Documents, the DIP Collateral, the Prepetition Indebtedness, the Prepetition Agreements, or the Prepetition Collateral, or the liens or claims granted under the Prepetition Agreements, the Interim Orders or this Final Order, or any other DIP Documents, including the DIP Liens and the DIP Superpriority Claims, (b) investigate, assert, or prosecute any claims, defenses, or causes of action (including, without limitation, any claims or causes of action under chapter 5 of the Bankruptcy Code) or any Challenge against the DIP Lender, the Prepetition Lender, or their respective agents, affiliates, representatives, attorneys, or advisors, (c) prevent, hinder or otherwise delay the DIP Lender's, or the Prepetition Lender's assertion, enforcement, or realization against or upon the Prepetition Collateral, the Cash Collateral or the DIP Collateral, in accordance with this Final Order, the other DIP Documents, and the Prepetition Agreements, (d) seek to modify any of the rights granted to the DIP Lender or the Prepetition Lender hereunder or under the DIP Documents or the Prepetition Agreements, or (e) take any other action prohibited by the DIP Term Sheet; provided, however, that, not more than $25,000 in the aggregate may be used to pay any allowed fees of the professionals retained by the Committee incurred in connection with investigating but not pursuing a Challenge (as defined below) or in opposing the Prepetition Lender's ability to credit bid, or to receive payment of, the Prepayment Charge as that term is defined in Section 2.4 of the Prepetition Loan Agreement.

18. **Termination of DIP Financing and Cash Collateral**.  Unless otherwise ordered by the Court, the Debtor's authorization to use the DIP Financing and Cash Collateral

shall immediately terminate upon the occurrence of a "Termination Event", which shall mean the earliest to occur of (a) the expiration of three (3) business days (the "Default Notice Period") following the provision of written notice to the Debtor (with a copy of such notice provided by email to counsel for the Debtor, counsel for the Committee, and the U.S. Trustee and by overnight mail to counsel for the Debtor) upon the occurrence of an Event of Default (as defined in the Term Sheet), (b) the occurrence of a Maturity Date as that term is defined in the DIP Term Sheet, and (c) the date on which neither of the Interim Orders nor this Final Order is in full force and effect.

19. **Adequate Protection**.

(a) As adequate protection for the interests of any secured creditor of the Debtor (collectively, the "Adequate Protection Parties") with a valid, perfected, enforceable, continuing and non-avoidable prepetition Lien on property of the Debtor (the "Prepetition Secured Parties") in an aggregate amount equal to any diminution in value of the Adequate Protection Parties' interest in the Cash Collateral from and after the Petition Date as a result of, arising from, or attributable to, the imposition of the automatic stay, or the use, sale or lease of the Cash Collateral (the "Diminution of Value"), the following is granted:

(i) Adequate Protection Liens. Solely to the extent of any Diminution of Value, the Adequate Protection Parties shall have pursuant to Sections 361, 362(d), 363(c), 363(e), and 364(d) of the Bankruptcy Code, replacement security interests in and Liens upon all of the DIP Collateral (the "Adequate Protection Liens"), in the same extent, validity and priority as such security interests and liens as existed as of the Petition Date on the Prepetition Collateral, which Adequate Protection Liens shall be junior and subject in all respects to the Permitted Senior Liens, the DIP Liens, the Carve Out, amounts due to Houlihan Lokey Capital, Inc.

("Houlihan") pursuant to its ~~November 12~~, 2014 letter agreement with the Debtor (the "Houlihan Engagement Letter") to the extent payable under a final and non-appealable order of this Court (the "Houlihan Approval Order") approving the Debtor's retention of Houlihan and the Engagement Letter (the "Houlihan Fee"), any break-up fee and/or expense reimbursement that may be payable to a "stalking horse" bidder pursuant to a final and non-appealable order of this Court (the "Bid Protections"), and the Hercules Prepetition Liens. Notwithstanding anything to the contrary contained herein, the Adequate Protection Liens granted to the Prepetition Lender under the DIP Documents, the Interim Orders and this Final Order (the "Hercules Adequate Protection Lien") shall be equal in priority to the DIP Liens.

(ii) Adequate Protection Superpriority Claims. Solely to the extent of any Diminution of Value, the Adequate Protection Parties shall have an allowed superpriority administrative expense claim (the "Adequate Protection Superpriority Claim") in the Case, as provided for in Section 507(b) of the Bankruptcy Code, which shall be junior and subject in all respects to the DIP Superpriority Claims, the Carve Out, the Houlihan Fee, and the Bid Protections. The Adequate Protection Superpriority Claims have priority in the applicable Case or Successor Case of the Debtor over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, 1113, or 1114 of the Bankruptcy Code, but are subordinate and junior in all respects to the DIP Superpriority Claims, the Carve Out, the Houlihan Fee, and the Bid Protections, it being understood that the Adequate Protection Parties shall not receive or retain any payments, property, or other amounts in respect of their Adequate Protection Superpriority Claims granted hereunder or under any Prepetition Secured Party's existing prepetition

21

agreements with the Debtor, including without limitation, the Prepetition Agreements (the "Existing Agreements"), unless and until all DIP Obligations and Carve Out related expenses are indefeasibly paid in full and in cash in accordance with the terms of the respective DIP Documents.

(iii) Periodic Payments to Prepetition Lender.  Periodic payments of interest to the Prepetition Lender only to the extent permitted by the Budget; provided, however, the Committee reserves the right to seek to recharacterize said interest payments as payments on account of principal in the event the value of the Prepetition Collateral is determined by Order of the Court to be less than the Prepetition Indebtedness.

(b) Notwithstanding anything to the contrary in this Final Order or in any other order of the Court, in determining the relative priorities and rights of the Adequate Protection Parties (including, without limitation, the relative priorities and rights of the Adequate Protection Parties with respect to the adequate protection granted hereunder), such relative priorities and rights shall be governed by this Final Order, the Existing Agreements, and any other valid agreements by and among the Adequate Protection Parties, and the adequate protection rights granted hereunder to each Adequate Protection Party shall have the same relative seniority vis-à-vis the adequate protection rights granted to each other Adequate Protection Party as the prepetition claims of such Adequate Protection Party have relative to the prepetition claims of such other Adequate Protection Party (taking into consideration the entity against which such claims are held or not held).

20. **Perfection of Liens**.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of executing, filing, or recording any mortgage, security agreement,

12/18/2014 SL1 1340171v3 109188.00001

pledge agreement, financing statement, or other instrument or document, or the taking of any other act that otherwise may be required under state or federal law, rule, or regulation of any jurisdiction to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Lender or the Prepetition Secured Parties to the priorities granted herein. The Debtor may execute, and the DIP Lender and the Prepetition Secured Parties are hereby authorized to execute, file, and/or record mortgages, security agreements, pledge agreements, financing statements, and/or other instruments or documents to evidence the DIP Liens and the Adequate Protection Liens, respectively, and the Debtor is hereby authorized, promptly upon a demand by the DIP Lender or a Prepetition Secured Party made in accordance with the terms of the DIP Documents or Prepetition Agreements, as applicable, to execute, file, and/or record any such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents as the respective DIP Lender or Prepetition Secured Party may request; provided, however, that no such execution, filing, or recordation shall be necessary or required in order to create or perfect the DIP Liens or Adequate Protection Liens, and further, if the DIP Lender or a Prepetition Secured Party, in its sole discretion, shall choose to execute, file, and/or record such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents, or otherwise confirm perfection of such Liens, all such instruments and documents shall be deemed to have been filed or recorded as of the Petition Date. A copy of this Final Order may, in the discretion of any DIP Lender or Prepetition Secured Party, be filed with or recorded in any filing or recording office in addition to or in lieu of such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents, and each and every federal, state, and local governmental agency, department, or office is hereby authorized to accept a copy of this Final Order and any and all documents and instruments

necessary and appropriate to consummate the transactions contemplated by this Final Order and the other DIP Documents, for filing and recording, and to deem this Final Order to be in proper form for filing and recording. Notwithstanding the foregoing, pursuant to any applicable law, the DIP Lender and the Prepetition Secured Parties are hereby authorized (but not required) to file or record financing statements and other filing or recording documents or instruments with respect to the DIP Collateral and DIP Liens and the Adequate Protection Liens, as applicable, without the Debtor's signature in such form and in such offices as the DIP Lender and the Prepetition Secured Parties, as applicable, determine appropriate to perfect the security interests of the DIP Lender and the Prepetition Secured Parties, as applicable, under DIP Documents and this Final Order; and DIP Lender and the Prepetition Secured Parties are authorized to use collateral descriptions such as "all personal property" or "all assets", in each case "whether now owned or hereafter acquired", words of similar import or any other description DIP Lender and/or the Prepetition Secured Parties, each in their sole discretion, so chooses in any such financing statements.

21. **Section 506(c)**. Except to the extent of the Carve Out, the Houlihan Fee, and the Bid Protections only, no costs or expenses of administration which have been or may be incurred in the Case or any Successor Case at any time shall be charged against or recovered from or against the DIP Lender, the Prepetition Lender, the DIP Collateral, or the Prepetition Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code or otherwise; provided, however, the Debtor reserves its rights to argue that Section 506(c) of the Bankruptcy Code does apply to accrued but unpaid post-petition distributor commissions and employees' paid time off in the total amount not to exceed $250,000.00 and Hercules reserves its rights to argue that it does not.

12/18/2014 SL1 1340171v3 109188.00001

22. **Fees**.  All fees paid and payable, and costs and expenses reimbursed or reimbursable by the Debtor to the DIP Lender under the DIP Documents are hereby approved. The Debtor shall promptly pay all such fees, costs, and expenses payable under the DIP Documents in accordance with the DIP Documents, up to the amount set forth in the Budget without the necessity of any notice or further application with the Court for approval or payment of such fees, costs, or expenses.  Professionals for the DIP Lender shall not be required to file fee applications, provided that invoices (subject in all respects to applicable privilege and work product doctrines) for any amounts in excess of those set forth in the Budget shall be provided to counsel for the Debtor, the Committee and the U.S. Trustee, which parties shall have fourteen (14) days to object to such invoices in the absence of which such invoices may be paid by the DIP Lender as an advance under the DIP Facility.

23. **Effect of Stipulations on Third Parties**.  The stipulations and admissions contained in the Interim Orders and this Final Order with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor shall be binding on the Debtor's estates and all parties in interest, including, without limitation, the Committee and any trustee appointed in this Case or any Successor Case, unless the Committee (which is granted standing and the requisite authority hereunder) or another party in interest other than the Debtor (which shall obtain standing and requisite authority), has timely commenced a contested matter or adversary proceeding, challenging the amount, validity or enforceability of the Prepetition Indebtedness or the perfection or priority of the Hercules Prepetition Liens, or otherwise asserting any objections, claims, or causes of action on behalf of the Debtor's estate against the Prepetition Lender relating to the Prepetition Indebtedness or the Hercules Prepetition Liens (such adversary proceeding or contested matter, a "Challenge"), on or

12/18/2014 SL1 1340171v3 109188.00001

before (a) as to the Committee, January 23, 2015, (b) as to any party in interest other than the Committee, the seventy-fifth (75th) calendar day after the date of entry of the First Interim Order, or (c) if the case converts to a Chapter 7, the Chapter 7 trustee shall have an additional 30 days after conversion, provided only that the deadlines in the preceding subparagraph of this Paragraph have not already occurred. For the avoidance of doubt, any Challenge by a party who must obtain standing shall be timely if a motion to obtain standing is filed concurrently with the filing of a contested matter or adversary proceeding asserting the Challenge.  If no such Challenge is timely commenced as of such date then, without further order of the Court, (x) the claims, Liens, and security interests of the Prepetition Lender shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Case and any Successor Case and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount, or otherwise, and (y) without further order of the Court, the Debtor and its estate shall be deemed to have relinquished, released, and waived any and all claims or causes of action against the Prepetition Lender with respect to the Prepetition Agreements or any related transactions.  Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the stipulations contained in paragraph 6 of this Final Order with respect to the validity, perfection or amount of the Hercules Prepetition Liens or the waiver of claims against the Prepetition Lender shall be binding on the Debtor's estate, any Committee, and all parties in interest.  If a Challenge is timely commenced, the stipulations contained in paragraph 6 of this Final Order shall be binding on the Debtor's estate and all parties in interest except to the extent such stipulations are specifically challenged in such Challenge, as and when originally filed (ignoring any relation back principles); provided, that if and to the extent a Challenge is

withdrawn, denied, or overruled, the stipulations specifically challenged in such Challenge also shall be binding on the Debtor's estate and all parties in interest.

24. **Indemnification**. The DIP Lender (and its officers, directors, employees, advisors and agents) shall be and hereby are indemnified and held harmless by the Debtor in respect of any losses, claims, damages, liabilities or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds hereof, except to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to arise from the gross negligence or willful misconduct of the relevant indemnified person. No exception or defense in contract, law, or equity exists as to any obligation set forth in this paragraph 24 or in the DIP Documents to indemnify and/or hold harmless the DIP Lender.

25. **Release**. Subject to the rights of the Committee or other party in interest that has obtained standing as provided in paragraph 23 of this Final Order and to the closing of the DIP Facility, in consideration of (i) the DIP Lender's agreement to the making of postpetition loans, advances and providing other credit and financial accommodations to the Debtor pursuant to the provisions of the Term Sheet, the Interim Orders, this Final Order and the other DIP Documents, and (ii) the Prepetition Lender's agreement to make loans, advances, providing credit and other financial accommodations to the Debtor pursuant to the provisions of the Prepetition Agreements and for the Hercules Prepetition Liens to be primed by the DIP Liens, the Debtor, on behalf of and for itself (collectively, the "Releasor"), shall forever release, discharge and acquit the DIP Lender and the Prepetition Lender and their respective participants, officers, directors, principals, agents, attorneys and predecessors-in-interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description,

including, without limitation, any so-called "lender liability" claims or defenses, that Releasor had, have or hereafter can or may have against Releasees as of the date hereof, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, in respect of events that occurred on or prior to the date hereof. In addition, upon the repayment of all DIP Obligations owed to the DIP Lender by the Debtor and termination of the rights and obligations arising under the Term Sheet, the Interim Orders, this Final DIP Order, or the other DIP Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Lender), the DIP Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action, except to the extent it is found by a final, non-appealable judgment of a court to arise from the gross negligence or willful misconduct, arising or occurring in connection with or related to the Term Sheet, the Interim Orders, this Final DIP Order, or the other DIP Documents (including without limitation any obligation or responsibility, whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated, to pay or otherwise fund the Carve-Out Expenses), on terms and conditions acceptable to the DIP Lender.

26. **Limitation of Liability**. In determining to extend credit under the DIP Facility, or in exercising any rights or remedies pursuant to this Final Order and the other DIP Documents, the DIP Lender shall not be deemed to be in control of the Debtor's operations or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

12/18/2014 SL1 1340171v3 109188.00001

27. **Debtor's Waivers**. At all times during the Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right it may have (a) to challenge the application of any payments authorized by this Final Order pursuant to Section 506(b) of the Bankruptcy Code (subject to paragraph 19(a)(iii)), (b) to seek authority to grant liens on the DIP Collateral, or any portion thereof to any other entities, pursuant to Section 364 of the Bankruptcy Code or otherwise, which liens are senior to, or pari passu with, the DIP Liens, the DIP Superpriority Claims, or any other liens or claims granted to the DIP Lender, unless the DIP Obligations are first repaid in full in cash and the DIP Facility is terminated, or (c) to seek authority to obtain postpetition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code, other than from the DIP Lender, or as may be otherwise expressly permitted under the DIP Documents, unless the Debtor uses the proceeds of such postpetition loans or other financial accommodations to pay in full in cash all DIP Obligations. Following entry of this Final Order, in any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing and/or whether any required notice has been provided, and the Debtor hereby waives its right to seek relief, including without limitation, under Section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender, as set forth in this Final Order or the other DIP Documents, other than to contest whether an Event of Default has occurred or is continuing and/or whether any required notice has been provided.

28. **Disposition of Collateral**. The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral in any way inconsistent with the terms and conditions of the DIP Documents without the prior written consent of the DIP

Lender or an order of this Court, except for sales in the ordinary course of the Debtor's business or *de minimis* asset sales approved by an order of this Court not to exceed the total sum of $40,0000, the proceeds of which shall be used in accordance with the Budget.  In the absence of express prior written consent, no consent to a sale, transfer, lease, encumbrance, or other disposition of any portion of the DIP Collateral shall be implied from any action, inaction, or acquiescence by the DIP Lender.  Unless otherwise ordered by this Court, until all DIP Obligations are indefeasibly paid and satisfied in full and in cash in accordance with the terms of the DIP Documents on terms and conditions acceptable to the DIP Lender, the proceeds of any sale of the DIP Collateral (other than sales in the ordinary course of business or *de minimis* asset sales approved by an order of this Court not to exceed the total sum of $40,000) shall be applied in the following order: (a) to pay or fund an escrow account or a restricted account maintained by counsel for the DIP Lender in the amount of (i) all allowed and unpaid professional fees and disbursements (regardless of when such fees and disbursements become allowed by order of the Court) incurred or accrued by the Debtor and the Committee at any time on or prior to the date of the closing of the sales in an aggregate amount not exceeding such unpaid professional fees and disbursements reflected in the Budget plus (ii) the other accrued administrative expenses included in the definition of Carve Out, (b) to pay the fees and expenses of the DIP Lender, (c) to pay any interest with respect to the outstanding principal amount of the DIP Facility which has accrued but is not yet due and payable, (d) to pay the principal amount of DIP Loans, (e) to pay any accrued and unpaid interest with respect to the Prepetition Facility, (f) to pay the principal amount of the Prepetition Facility (subject to paragraph 23 of this Final Order), (g) to pay the early termination fee on the Prepetition Facility, and then, (h) to the Debtor's estate.

12/18/2014 SL1 1340171v3 109188.00001

29. **Collateral Rights**.  Except as expressly permitted in this Final Order and the other DIP Documents, in the event that any person or entity that holds a Lien or security interest in DIP Collateral that is junior or subordinate to the DIP Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source, prior to payment in full and in cash and the complete satisfaction of all DIP Obligations, such junior or subordinate Lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the DIP Lender, and shall immediately turnover such proceeds to the DIP Lender for application in accordance with this Final Order and the other DIP Documents.

30. **Modification of Stay; Rights and Remedies Upon Termination**.

(a)  Subject to paragraph 18 of this Final Order, upon the occurrence of a Termination Event, the automatic stay provisions of Section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Lender and Prepetition Lender to exercise all rights and remedies provided in this Final Order, the other DIP Documents and the Prepetition Agreements, as applicable, and to take any or all of the following actions without further order of or application to this Court:  (i) immediately terminate the Debtor's use of Cash Collateral and cease making any DIP Loans to the Debtor; (ii) immediately declare all DIP Obligations to be immediately due and payable; (iii) immediately terminate the DIP Facility and the availability of any DIP Loans thereunder; (iv) immediately set off any and all amounts held on account of or owed to the Debtor against the DIP Obligations and/or the Prepetition Indebtedness, or otherwise enforce rights against the DIP Collateral and/or the Prepetition Collateral in the possession of, or subject to a lien in favor of the DIP Lender and/or the Prepetition Lender for application towards the DIP Obligations or Prepetition Indebtedness,

as the case may be; and (v) take any other actions or exercise any other rights or remedies permitted under this Final Order, the other DIP Documents, the Prepetition Agreements, or applicable law to effect the repayment of the DIP Facility and Prepetition Indebtedness.

(b)  The automatic stay under Section 362(a) of the Bankruptcy Code shall be automatically vacated and modified as provided in paragraph 30(a) above, effective following the expiration of the Default Notice Period, unless the Court orders otherwise.  During the Default Notice Period, the Debtor (i) shall have no right to request extensions of credit under the DIP Facility, other than with the consent of the DIP Lender, but (ii) may be entitled to an emergency hearing before the Court as set forth in Paragraph 27 above, upon proper notice to the DIP Lender.  The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may respectively have under the DIP Documents, or otherwise.  The Debtor shall cooperate fully with the DIP Lender in any permitted exercise of rights and remedies, whether against the DIP Collateral or otherwise.

31.  **Survival of Order**.  The provisions of this Final Order and any actions taken pursuant hereto (a) shall survive the entry of any order: (i) confirming any chapter 11 plan in the Case, (ii) converting the Case to a Successor Case, or (iii) dismissing the Case, and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, Liens, and security interests granted pursuant to this Final Order shall maintain their priority as provided by this Final Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the DIP Documents.

32.  **No Waiver**.  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender may have to bring or be heard on any matter brought before this Court.

12/18/2014 SL1 1340171v3 109188.00001

33. **Reservation of Rights**.  The terms, conditions, and provisions of this Final Order are in addition to and without prejudice to the rights of the DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Documents, or any other applicable agreement or law, including, without limitation, rights (a) to seek relief from the automatic stay, (b) to seek an injunction, (c) to oppose any future request for use of Cash Collateral or for the granting of any interest in the DIP Collateral, or of priority in favor of any other party, (d) to object to any sale of assets, or (e) to object to applications for allowance or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Debtor's estates.

34. **No Consent**.  No action, inaction, or acquiescence by the DIP Lender, including funding the Debtor's operations and the conduct and pursuit of a sale and liquidation process under this Final Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Lender to a charge against the DIP Collateral pursuant to Sections 506(c), 552(b), or 105(a) of the Bankruptcy Code.  The DIP Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.  The DIP Liens shall not be subject to Sections 510, 549, 550, or 551 of the Bankruptcy Code and/or the "equities of the case" exception of Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Lender with respect to the Prepetition Agreements or the Prepetition Collateral.

35. **Binding Effect; Successors and Assigns**.  Except as otherwise provided in the DIP Documents, the provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Lender, the Adequate Protection Parties, the Debtor, and their respective successors and assigns (including any trustee or fiduciary hereafter

33

appointed or elected as a legal representative of the Debtor, its estate, or with respect to the property of its estate) whether in these Case, in any Successor Case, or upon dismissal of any Case or Successor Case; provided, however, that the DIP Lender shall have no obligation to extend any financing to, or permit the use of Cash Collateral or DIP Collateral by, any chapter 7 or chapter 11 trustee or similar representative person appointed for the Debtor's estates.

36. **Proofs of Claim**. Notwithstanding anything to the contrary contained in any prior or subsequent order of this Court:

(a) The DIP Lender shall not be required to file proofs of claim in the Case or any Successor Case in order to maintain their respective claims with respect to the DIP Obligations, all of which shall be due and payable in accordance with this Final Order and the other DIP Documents, without the necessity of filing any such proof of claim; the statements of claim in respect of the respective DIP Obligations set forth in this Final Order, together with the evidence accompanying the Motion, and presented at the Interim Hearings and/or Final Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

(b) The Prepetition Lender shall not be required to file any proof of claim with respect to any of the Prepetition Indebtedness, all of which shall be due and payable in accordance with the Prepetition Agreements and this Final Order, as applicable, without the necessity of filing any such proof of claim, and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the Prepetition Agreements, this Final Order, or the Prepetition Indebtedness, or any other obligations hereunder, or prejudice or otherwise adversely affect the rights, remedies, powers, or privileges of the Prepetition Lender under the Prepetition Agreements; provided, further, that, for the avoidance of doubt, the filing of any

34

proof of claim by the Prepetition Lender shall not in any way prejudice or otherwise adversely affect such parties' rights, remedies, powers, or privileges under the Prepetition Agreements and this Final Order.

37. **Order Effective Immediately**. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

38. **Final Order Governs**. In the event of any inconsistency or conflict between any of the terms and provisions of the Interim Orders, this Final Order and the other DIP Documents, the terms and provisions of this Final Order shall govern.

39. **Monitoring of Collateral**. The DIP Lender, and its consultants and advisors, shall be given reasonable access to the Debtor's books, records, assets, and properties.

40. **Financial Reporting**. The Debtor shall provide the DIP Lender and the Committee with the monthly financial reporting given to the U.S. Trustee and all of the financial reporting as required under and in all instances consistent with the DIP Documents.

41. **Cash Management**. The Debtor's cash management system shall at all times be maintained (a) in accordance with any order of this Court approving the maintenance of the Debtor's cash management system, and (b) in a manner which is otherwise reasonably satisfactory to the DIP Lender. The DIP Lender shall be deemed to have "control" over all such accounts for all purposes of perfection under the Uniform Commercial Code.

42. **Credit Bidding**. The DIP Lender and the Prepetition Lender shall each have the unqualified right to credit bid for all or any portion of the Debtor's assets in accordance with the Order, entered by this Court, (A) Approving Bidding Procedures; (B) Approving Form of

12/18/2014 SL1 1340171v3 109188.00001

Sale Notice and Assumption/Cure Notice; (C) Approving Procedures for the Assumption and Assignment of Contracts and Leases; (D) Authorizing the Debtor to Designate a Stalking Horse and Provide Bid Protections; and (E) Setting a Date for the Sale Hearing.

43. **No Third Party Rights**.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any party, creditor, equity holder, or other entity other than the DIP Lender, the Prepetition Lender, the Adequate Protection Parties, and the Debtor, and their respective successors and assigns.

44. **Reserved**.

45. **Headings**.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

46. **Retention of Jurisdiction**.  This Court retains jurisdiction to interpret, implement, and enforce the provisions of this Final Order and the other DIP Documents.

47. **Subsequent Reversal or Modification**.  This Final Order is entered pursuant to, *inter alia*, Section 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender, the Prepetition Lender, and the Adequate Protection Parties all protections afforded by Section 364(e) of the Bankruptcy Code.

Dated: December **22**, 2014
       Wilmington, Delaware

Christopher S. Sontchi,
United States Bankruptcy Judge

12/18/2014 SL1 1340171v3 109188.00001